**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| HELFERICH PATENT LICENSING, L.L.C. an Illinois Limited Liability Company,<br>    *Plaintiff*,<br><br>    v.<br><br>THE NEW YORK TIMES COMPANY, a New York Corporation,<br>    *Defendant*. | Case No. 10 C 4387<br>John W. Darrah, District Judge<br>Jeffrey T. Gilbert, Magistrate Jude |
| HELFERICH PATENT LICENSING, L.L.C. an Illinois Limited Liability Company,<br>    *Plaintiff*,<br><br>    v.<br><br>G4 MEDIA, LLC, a Delaware Limited Liability Company,<br>    *Defendant*. | Case No. 11 C 7395<br>John W. Darrah, District Judge<br>Jeffrey T. Gilbert, Magistrate Jude |
| HELFERICH PATENT LICENSING, L.L.C. an Illinois Limited Liability Company,<br>    *Plaintiff*,<br><br>    v.<br><br>CBS CORPORATION, a Delaware Corporation,<br>    *Defendant*. | Case No. 11 C 7607<br>John W. Darrah, District Judge<br>Jeffrey T. Gilbert, Magistrate Jude |

| | |
|---|---|
| HELFERICH PATENT LICENSING, L.L.C. an Illinois Limited Liability Company, *Plaintiff*, v. BRAVO MEDIA, LLC, a New York Limited Liability Company, *Defendant*. | Case No. 11 C 7647 John W. Darrah, District Judge Jeffrey T. Gilbert, Magistrate Jude |
| HELFERICH PATENT LICENSING, L.L.C. an Illinois Limited Liability Company, *Plaintiff*, v. J.C. PENNEY CORPORATION, INC., a Delaware Corporation, *Defendant*. | Case No. 11 C 9143 John W. Darrah, District Judge Jeffrey T. Gilbert, Magistrate Jude |

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on a Motion to Modify the Default Protective Order filed by Defendants The New York Times Company, G4 Media, LLC, CBS Corporation, Bravo Media, and J.C. Penney Corporation, Inc. (collectively "Defendants").[1] Defendants argue that they face potential serious injury from the continued participation of Plaintiff Helferich Patent Licensing LLC's ("HPL") counsel in patent prosecutions and reexaminations of the patents that cover Defendants' technologies at issue in this case, after HPL's counsel has examined the

---

[1] Each of Defendants filed the same Motion to Modify the Default Protective Order entered in their respective cases. For Defendant New York Times, the docket entry for the Motion is [221], for G4 Media, LLC [82], CBS Corporation [76], Bravo Media [79], and J.C. Penney Corporation, Inc. [91].

2

Defendants' confidential information produced during discovery in this case. Defendants have filed the instant Motion to Modify the Default Protective Order entered under Local Patent Rule ("LPR") 1.4 and LPR Appendix B to add a prosecution bar that will prevent any HPL attorney who has reviewed Defendants' confidential information from prosecuting patents with claims written to cover Defendants' technologies.

HPL has filed five lawsuits alleging patent infringement by Defendants, which have been coordinated before this Court. Pursuant to LPR 1.4, the default protective order found in LPR Appendix B took effect when each Defendant filed its initial disclosures. *See* LPR 1.4. The default protective order prohibits disclosure of information designated Confidential or Highly Confidential absent written permission from the producer or the court. The default protective order, however, does not include a prosecution bar preventing opposing counsel from participating in any patent prosecutions or reexaminations before the United States Patent and Trademark Office ("PTO") on subjects related to the litigation.

It is not disputed that Defendants raised the issue of a prosecution bar early in the litigation in early 2011 and that HPL objected, arguing that a prosecution bar is unwarranted. Defendants, however, did not seek a modification to the default protective order for at least two years after they first raised the issue and more than one year after the stay in this litigation was lifted and extensive discovery began to proceed, including Defendants' production of nearly two hundred thousand pages of documents most of which were designated "Confidential" or "Highly Confidential." Defendants also during the same time filed multiple patent reexamination proceedings in the PTO. HPL's counsel, particularly Steven Lisa and Jon Kappes who are specifically identified in Defendants' motion, have continued to participate extensively in this

litigation and the patent prosecutions and reexaminations on HPL's behalf, including the prosecution of patents closely related to the matters at issue in this lawsuit. All of the proceedings – before this Court and the PTO – are advanced and nearing important stages for Markman or prior art decisions.

Defendants' counsel six months ago sought a prosecution bar in related litigation pending in the District Court of Arizona. *See Helferich Patent Licensing, LLC v. Suns Legacy Partners, LLC*, No.2:11-cv-02304 (D.Ariz.). After the parties' briefed the issue, Judge Neil Wake denied Defendants' motion seeking to impose a prosecution bar against HPL's counsel. Instead, Judge Wake modified the protective order to require that "[HPL] not rely on highly confidential information disclosed by defendants in this litigation in any proceeding before the PTO." *See Helferich Patent Licensing, LLC v. Suns Legacy Partners, LLC*, 12/5/12 Order, at * 7 ("Judge Wake 12/5/12 Order").

Defendants now seek to modify the default protective order in this case to add a prosecution bar that Defendants argue will protect them from any inadvertent misuse of their confidential information. Specifically, Defendants request the amendment of the default protective order to add a prosecution bar that would prevent HPL's counsel from participating in the prosecution of patents whose claims cover technologies disclosed in the course of this lawsuit, for a period of two years from the conclusion of this lawsuit. HPL opposes the imposition of any modification to the default protective order to add a prosecution bar.

Because the question of a prosecution bar "is an issue unique to patent law," the question is governed by Federal Circuit law. *In re Deutsche Bank Trust Co. Ams.*, 605 F.3d 1373, 1377 (Fed. Cir. 2010). The Federal Circuit explained in *Deutsche Bank* that the burden is on the

moving party to show good cause for modification of the protective order. *Id.* at 1378. The question of what constitutes "good cause" generally requires a movant to show "a sound basis or legitimate need to take judicial action." *Trading Techs. Int'l Inc. v. GL Consultants, Inc.*, 2011 WL 148252, at *2 (N.D. Ill. Jan. 18, 2011) (quoting *Wiggins v. Burge*, 173 F.R.D. 226, 229 (N.D. Ill. 1997)). Courts have recognized that a narrowly tailored patent prosecution bar may be necessary when there is risk of disclosure and does not require that a disclosure actually has occurred. As the Federal Circuit explained in *Deutsche Bank*:

> There may be circumstances in which even the most rigorous efforts of the recipient of such information to preserve confidentiality in compliance with the provisions of such a protective order may not prevent inadvertent compromise. As aptly stated by the District of Columbia Circuit: "[I]t is very difficult for the human mind to compartmentalize and selectively suppress information once learned, no matter how well-intentioned the effort may be to do so.

*Deutsche Bank*, 605 F.3d at 1378 (quoting *FTC v. Exxon Corp.*, 636 F.2d 1336, 1350 (D.C. Cir. 1980)).

The party seeking a patent prosecution bar bears the burden to first show that there is an "unacceptable" risk of inadvertent disclosure of confidential information. *U.S. Steel Corp. v. United States*, 730 F.2d 1465 (Fed. Cir. 1984). To determine whether there is such an unacceptable risk, a court should examine the extent to which counsel is involved in "competitive decisionmaking" with its client. *Id.* The Federal Circuit has defined competitive decisionmaking as "a counsel's activities, association, and relationship with a client that are such as to involve counsel's advice and participation in any or all of the client's decisions (pricing, product design, etc.) made in light of similar or corresponding information about a competitor." *Id.* at 1468, n.3.

It is clear that HPL's counsel is involved in competitive decisionmaking and participates extensively in prosecuting new patent claims and defending patent reexaminations, crafting patent applications, negotiating licenses for the patents, and litigating HPL's patent rights in federal court. HPL does not argue otherwise in its opposition to Defendants' motion. Because of HPL's counsel's extensive responsibilities and the scope of their roles in this litigation and the reexamination proceedings before the PTO, the Court agrees with Judge Wake, for the purpose of this motion, that under the *Deutsche Bank* standard there is an unacceptable risk of inadvertent disclosure in this litigation. *See* Judge Wake 12/5/12 Order, at *5.

A finding that there is an unacceptable risk of disclosure, however, does not end the inquiry and is not enough to justify the issuance of a patent prosecution bar. *See Deutsche Bank*, 605 F.3d at 1380. In *Deutsche Bank*, the Federal Circuit held that, even if the Court finds that the risk of misuse is unacceptably high, the Court still must weigh that risk against the harm that may occur from imposition of a prosecution bar, especially the prejudice from denying the patentee access to the counsel of its choice. 605 F.3d at 1380-81. In balancing these conflicting interests, a district court has broad discretion to decide what degree of protection is required. *Id.* at 1380 (citing *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984); *Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465, 1470 (9th Cir. 1992)).

HPL argues that the prejudice of the proposed prosecution bar to HPL would be enormous. According to HPL, Defendants belatedly seek to modify the protective order to add a prosecution bar at the most critical stage of these proceedings and when a modification to the protective order currently in place would create an unfair tactical advantage for Defendants and be severely prejudicial to HPL, particularly in its ability to defend the reexamination and

post-grant review PTO proceedings initiated by Defendants. Defendants disagree and argue that HPL and its counsel will not suffer any injury or prejudice as a result of the proposed prosecution bar because, as Defendants assert, the bar sought is narrow and thus will negate any resultant harm. Specifically, Defendants seek a bar that would prevent HPL's counsel from prosecuting patent claims that cover the technologies described in the Defendants' confidential technologies and that counsel would only be prevented from participating in the drafting of claims that would cover the confidential information that they reviewed.

The Court recognizes that Defendants raise a legitimate concern that their confidential information could be competitively misused and that such use would be improper. The risk of competitive misuse of Defendants' confidential information, however, is outweighed by the significant harm HPL would suffer if HPL were denied the counsel of its choice in both its patent prosecution and the reexaminations. HPL's counsel has been representing HPL in litigation in this Court and before the PTO for years, including the multiple rounds of reexaminations filed by Defendants in this case. Defendants raised the issue of a prosecution bar almost two years ago but did not seek relief from this Court until now.

While the Court does not find that Defendants waived the argument as counsel for HPL argues, the delay does raise some question as to the propriety of entering a prosecution bar this late in the litigation when Defendants initially raised the issue with HPL's counsel almost two years ago but did nothing to follow through when HPL objected. The playing field would have been more level had Defendants sought relief from the Court on this issue prior to the production of Defendants's documents. If the Court had modified the default protective order to include a prosecution bar at that time, HPL's counsel could have made a more informed decision about

which of HPL's counsel should be reviewing Defendants' documents so as to shield some of HPL's attorneys from any prosecution bar that may have been entered at the time.

Defendants did not front the issue at the outset, however, and now HPL would suffer even more prejudice by not having its chosen counsel so late in the litigation both in this Court and in the patent examinations before the PTO. As the district court in *Xerox Corp. v. Google*, 270 F.R.D. 182 (D. Del. 2010) recognized:

> [P]laintiff's trial counsel have acquired expertise in the patents-in-suit as well as the relationship between plaintiff's claim language and the prior art. Forcing plaintiff to rely on less knowledgeable counsel during reexamination would thus increase costs and duplicate effort. Plaintiff also has a legitimate interest in formulating a coherent and consistent litigation strategy. While a parallel reexamination proceeding may not formally be part of this litigation, choices made before the PTO nonetheless have consequences in this court. The validity of reexamined and amended claims, for example, will ultimately have to be explained and defended before a jury in this litigation. Trial counsel are better suited to assess claim language to this end than reexamination counsel, who practice before the PTO and do not try cases to a jury. Additionally, because reexamination (especially inter partes reexamination) is an increasingly important venue for challenging a patent's validity, preventing trial counsel exposed to defendants' confidential information from fully participating in reexamination proceedings would force plaintiff to split its resources between two fronts of the same war.

270 F.R.D. at 185 (internal citations and footnotes omitted). Similarly, this Court is not convinced that the risk of disclosure, even though it may be high, outweighs the prejudice from denying HPL access to its chosen counsel. The District Court in Arizona also found in favor of HPL on this very point:

> Counsel for [HPL], including Mr. Kappes and Mr. Lisa, have represented [HPL] both in litigation and before the PTO for many years and are deeply familiar with the patents at issue here. Depriving [HPL] of the specialized representation that its counsel can provide in this case would force them to rely on less knowledgeable counsel, either in this litigation or before the PTO, and "thus increase costs and duplicate effort." *Xerox*, 270 F.R.D. at 185. Because that harm outweighs the

speculative risk of inadvertent disclosure, Defendants have not met their burden of establishing good cause for a patent prosecution bar.

Judge Wake 12/5/12 Order, at *3.

In conclusion, Defendants have failed to show good cause to modify the default protective order to add a prosecution bar. The Court concludes that the risk of inadvertent or competitive use of Defendants' confidential information by HPL's counsel is outweighed by the significant harm that HPL would suffer if it were denied the full benefit of its chosen counsel, particularly at this stage in the litigation in this case and given the status of the reexaminations before the PTO. The Court, however, recognizes, as did the District Court in Arizona, that "[t]he risk that any confidential information could be used in future patent claims or reexamination can be mitigated without the harm of a prosecution bar by adding specific protection against such use in the protection bar in this case." Judge Wake 12/5/12 Order, at *4. To that end, this Court adopts the same requirement used by the District Court in Arizona to modify the default protective order and require that HPL not rely on highly confidential information disclosed by Defendants in this case in any proceeding before the PTO. The Court notes that such a restriction may be implicit in the default confidentiality order, but it does not hurt to make it explicit.

Accordingly, the Motion to Modify the Default Protective Order is denied. The parties, however, shall submit a revised protective order that is consistent with the modified protective order entered in the related Arizona case. The modified protective order should be submitted electronically to Magistrate Judge Gilbert's Proposed_Order_Gilbert@ilnd.uscourts.gov for the Court's review and so that it can be entered electronically.

It is so ordered.

Dated: June 21, 2013

_____
Jeffrey T. Gilbert
United States Magistrate Judge